BOWDRY v. STITZEL-WELLER DISTILLERY et al.

No. 32935. March 16, 1948.

Rehearing Denied April 20, 1948.

*192 P. 2d 279.*

John Barry and John Howard Payne, both of Oklahoma City, for plaintiff in error.

George M. Nicholson, of Oklahoma City, and, Van Winkle & Becker, of Louisville, Ky., for defendants in error.

CORN, J. John M. Geissler and Alma E. Geissler, executors of the estate of Arthur H. Geissler, deceased, on March 18, 1946, secured an order from the county court of Oklahoma county authorizing the sale of certain whiskey warehouse receipts belonging to the estate. Other personal property not involved in this appeal was included in the order. The order authorized private sale without notice and directed the executors to make due return under oath. The whiskey covered by the warehouse receipts was stored in a warehouse of the appellee, Stitzel-Weller Distillery, from whom the executors received an offer of $7,605, which they accepted by attaching the receipts to a draft for that amount, drawn on the distillery company. Before the executors made any return or report to the county court of their action, the appellant, L. B. Bowdry, submitted a formal bid of $8,500 for the property. The executors refused to consider such bid, stating they had perfected a sale. Bowdry then filed in the county court his offer of $8,500 and a hearing was had. The county court directed acceptance of the Bowdry bid and delivery of the property. The executors and the distillery company appealed to the dis-

trict court. The district court reversed the judgment of the county court. From such action Bowdry appealed to this court.

The cause was tried upon an agreed statement of facts which, insofar as they affect the issues here presented, are: That the executors accepted the distillery company's offer of $7,605, and without securing approval of the sale, forwarded the stock certificates, with draft attached, for the amount of the bid. Soon thereafter appellant's bid of $8,500 was submitted, which was rejected upon the theory that the executors had perfected a complete and final transfer of title to the property. It was shown that charges of $1.82 taxes, 10c storage, and $1.74 insurance premium per barrel, were running on this property.

The district court reversed the judgment of the county court holding that title passed to the distillery company on acceptance of its bid.

The appellant contends that the executors could not pass title to this property or make a valid final sale until the same had been approved or confirmed by the county court.

Const. art. 7, sec. 13, provides that the county court shall "transact all business appertaining to the estate of deceased persons . . . including the sale, settlement, partition and distribution of the estate thereof." See Shawnee Nat. Bank v. Marler, 106 Okla. 71, 233 P. 207. The county court may, by order, grant to executors only such power or authority as the statute permits. The several sections of the statutes governing probate procedure were enacted to protect and conserve the estates of deceased persons and to that end must be liberally construed.

Sections 382 and 387 of 58 O. S. 1941, when construed together, clearly require that all sales of property had thereunder must be reported under oath and approved by the county court before title to the property sold passes.

This particular sale was had under the provisions of section 387.

58 O.S. 1941 §382, is applicable to the sale of any and all property of an estate of a decedent not specifically excepted by the specific terms of some other statute. This section provides that "all sales must be reported under oath and confirmed by the county court **before the title to the property sold passes.**" Section 387, under which the proceedings in this case were had, contains no language indicating that confirmation is not required, but, on the contrary, expressly continues the personal responsibility of the executor or administrator, "for the property," until the court has **approved** the sale. The concluding sentence of the section reads:

"The order for the sale may be made without notice; but the executor, administrator or special administrator **is responsible for the property,** unless after making a sworn return, and on proper showing, the court shall **approve** the sale."

These sections were adopted from California; they are, in substance, Civil Procedure, sections 1516 and 1517, and were construed by the Supreme Court of that state in Bovard v. Dickenson, 131 Cal. 162, 63 P. 162, and held to require approval, which is in fact confirmation by the county court before title could pass. In the case of Jones v. Wheeler, 23 Okla. 771, 101 P. 1112, we held:

"Under St. Okla. 1893, sections 1334, 1335, no sale of any of the personal property of a deceased will pass a good title without an order of the court. Said sections provide: section 1334:

" 'All property of a decedent, except as otherwise provided for homestead and personal property set apart for the surviving wife and husband and minor children shall be chargeable with the payment of debts of the deceased, the expenses of the administration, and the allowance to the family. And the property, personal and real, may be sold as

the court may direct, in the manner herein prescribed.'

"Section 1335:

" 'No sale of any property of an estate of a decedent is valid unless made under order of the probate court, except as otherwise provided. All sales must be reported under oath, and confirmed by the probate court before the title to the property sold passes.'

"Our probate system being modeled after, it is probable that these sections were adopted from California. They are, in substance, Code Civ. Prod. sections 1516, 1517, which were construed by the Supreme Court of that state in Bovard v. Dickenson, 131 Cal. 162, 63 P. 162.'"

Title to the property involved in this action did not and could not pass until the sale attempted thereunder had been reported to and approved and confirmed by the county court. Estate of Flaherty, 69 Cal. App. 429, 231 P. 591; Farmers Nat. Bank v. Cravens, 93 Okla. 58, 219 P. 138.

Defendants in error assert in their brief that the jurisdiction of the county court must be exercised in the manner prescribed by statutes, citing In re Johnson, 72 Okla. 174, 179 P. 605, and other cases, and that there being no provision in the Oklahoma statutes authorizing or permitting the county judge to accept an increased bid on the sale of personal property, or to confirm a sale to the person making such increased bid, the action of the county court in sustaining the objection of Bowdry to the confirmation of the sale, and the sale of the property to Bowdry, were beyond the jurisdiction and power of the court, and therefore void. We are unable to agree with this assertion.

58 O. S. 1941 §1, defining the jurisdiction of the county court, authorizes the court to order the sale of property of estates belonging to minors, and (subdivision 10) "to make such orders as may be necessary to the exercise of the powers conferred upon it." Ob-

viously, the requirement made in both sections 382 and 387, for the making of a return and confirmation of sale where personal property is sold, is for the purpose of enabling the county court to satisfy itself that the sale of such property was fairly conducted, and that the price received by the executors therefor was the best price which could be obtained. If the county court finds that the sale was not fairly made, or that the property could be sold for a higher price, so that a new sale would be more profitable to the estate, it had the power to refuse to confirm the sale and to require a new sale to be made. It had already found, when it made the order of sale, that a sale would be for the best interest of the estate. If it found, upon the hearing had upon the return of sale, that a substantially greater sum could be obtained by reselling the property, certainly, under the power conferred upon it by the 10th subdivision of section 1, hereinabove quoted, it could refuse to confirm and order the executors to resell.

Therefore, when at the hearing on the return of sale, it appears that a responsible person has made a written bid for the property at a substantially higher purchase price than the one reported by the executors, we can perceive no valid reason why the county court, in the absence of any showing that a greater sum than that so bid may be obtained, may not require the executors to accept such increased bid and sell the property to such bidder. This would accomplish the same purpose as would a resale of the property, without putting the estate to the trouble and expense of initiating new sale proceedings. While such authority is not expressly conferred by the Probate Code, we think it necessarily inheres in the power and discretion of the probate court in order to enable it to carry out the purpose and intent of the statutes.

We hold that the rejection of the sale made by the executors and the sale and confirmation of the same to Bow-

dry, was within the authority granted by section 1, subdivision 10, to make such orders as may be necessary to the exercise of its powers.

The executors and the distillery company had the statutory right to appeal from the order of the county court to the district court and the appellant had the right to appeal from the order of the trial court. 58 O. S. 1941 §721, subd. 8, authorizes an appeal: "From any other judgment, decree or order of the county court in a probate cause, or of the judge thereof, affecting a substantial right." This court, in the case of In re Bohanan, 37 Okla. 560, 133 P. 44, held:

"Under section 5451, Comp. Laws 1909, authorizing an appeal from a judgment order, or decree of the county court against or in favor of directing the sale or conveyance of real property to any party aggrieved thereby, the highest responsible bidder at a guardian's sale, whose timely bid in writing is rejected by the county court, may appeal from an order confirming a sale and directing the issuance of a deed to a lower bidder made over his objections."

The judgment of the trial court is reversed and the cause remanded, with directions that the decree vacating the order of the county court be set aside and the sale of the property to the appellant be consummated.

BAYLESS, WELCH, and LUTTRELL, JJ., concur. RILEY, J., concurs specially. HURST, C.J., DAVISON, V.C.J., and GIBSON and ARNOLD, JJ., dissent.

---

RILEY, J. (concurring). The executors of the estate of Arthur H. Geissler, deceased, under an order of the county court of Oklahoma county, delivered receipts to whiskey located in warehouse in the Commonwealth of Kentucky and received a consideration therefor, but failed to secure either a confirmation or approval of the transmutation for an extended interval of time.

Mr. Bowdry, petitioning for permission to do so, paid into the county court a consideration substantially larger than that which had been paid by the distillery to the executors. Mr. Bowdry obtained an order of the county court in acceptance of his offer for the whiskey. The sale to Mr. Bowdry was confirmed and the purported sale theretofore made by the executors was disapproved. The district court, on appeal, reversed the county court. Mr. Bowdry appeals to this court.

The primary question presented on this appeal is whether title to the chattels or personal property, represented by the warehouse receipts, passed to the distillery from the executors at the time the distillery paid the consideration to executors. If so, Mr. Bowdry could not subsequently purchase the commodity. If not, the county court, in the exercise of sound judicial discretion, was correct in declining to confirm the tentative sale to the distillery and in confirming the sale for the greater consideration paid into court by Bowdry for the whiskey. The highest consideration obtainable for a sale by a county court, sitting in probate, is for the best interest of deceased's estate. A deceased person's interest, represented by his estate, should be safeguarded in a court of justice and the best interest of a sale of an asset of such an estate is the highest price agreed to be paid.

Ordinarily, title to personal property passes upon delivery for a consideration agreed upon or paid. An executor or an administrator is only an agency of the county court sitting in probate.

An agency, such as an executor, exercises authority delegated and devolved by lawful orders of the court. That such orders may not transgress the statute is certain. Omissions within the text of an order purporting to delegate authority are supplied by the

law. Herein, the statute governs and determines the issue involved.

"No sale of any property of an estate of a decedent is valid unless made under order of the county court, except as otherwise hereinafter provided. All sales must be reported under oath and confirmed by the county court, before the title to the property sold passes." 58 O.S. 1941 §382.

The statute is all-embracing; it is conclusive except as to the exception expressed in the text.

The requirement of the general statute, supra, is in derogation of the general rule applicable to persons sui juris. Under the general rule applicable to persons in esse and sui juris, title to personal property passes upon delivery for an adequate consideration paid or agreed to be paid. The reason for the rule and for the exception is obvious. The first is based on intention of the contracting parties, one of which is the vendor and the other the vendee. But the owner of this whiskey is dead. The court represents the deceased's estate. That court acts by and through the judge and through the agency created by law and appointed by the court. The executor is appointed by the court, may be discharged by the court, is subject to the superintending control of the court and the executor's acts and conduct are not valid until they receive the court's approval.

The purpose of the general statute is the welfare of the estate. That statute requires a confirmation in all such cases.

A special statute applicable to a given situation governs over the terms of a general statute. Moreover, courts must examine into related provisions of a general statute and investigate special statutes to which reference is made by exceptions contained in general statutes. This procedure is for the purpose of ascertaining the governing rule of law. The law is the working tools of a court. By these, facts are measured. The law may not be presented to a judge. The law exists, or, in the absence of law, there is chaos and anarchy.

Title 58 O.S. 1941 §387 is the only special statute urged upon us as being applicable. It is the only related statute special in its nature, contained in the Code. The special statute and the general statute are compatible and harmonious so that the one does not govern over the other.

Provisions of this special statute authorize an order to be made by the county court to sell personal property likely to depreciate in value or which will incur loss or expense by being kept. There is involved here property of such a character.

In consideration of the sale of the commodity so situated, a harmonious view should exist as to the applicability of the provisions of the general and special statutes and the governing effect of their requirements to the commodity which, due to influences upon it, may depreciate in value to the detriment of the estate of the deceased.

"But," says the statute, "the executor . . . is responsible for the property". That phrase means that dominion and control of the whiskey, or evidence of it, the warehouse receipts, should be retained by the executors until the county court approves or confirms the tentative sale.

Herein, the county court within its discretion declined to approve the sale to the distillery in Kentucky, but, to the contrary, the county court rejected that tentative sale as presented to the court by the executors. The county court sought to sustain the higher bid of Bowdry.

"Approval," according to Mr. Webster, is equivalent to and synonymous with confirmation. The word "confirmation" is used in the general statute. The word "approval" is used in the special statute. Things that are equal

to the same thing are equal to each other. The special statute and the general statute require confirmation of all sales of any property of whatever nature belonging to or forming a part of the estate of the deceased.

There is nothing contained in the special statute incongruous with provisions of the general statute. The special statute requires an approval of such a sale.

The conclusion of this court should be conformable to constructions of these statutes prior to their adoption in this state by states wherein the statutes previously existed, whether such states were the states of the origin of the statutes or whether the statutes were theretofore construed by the courts of states wherein the statutes originated.

Presumptively, statutes adopted by the State of Oklahoma are adopted in view of the construction previously placed upon them. The State of California construed these statutes conformably to the views herein expressed. While it is true that subsequent to the time of construction of these statutes by the Supreme Court of the State of California, the Legislature of the State of California amended these statutes, yet comfort for this view exists by reason of the fact that a legislative act in California was required to obtain an adverse rule of law.

Some think the legislative action in California was for the purpose of making the meaning of the statutes clearer to the courts of California. I do not think so. It is believed that the legislative purpose in California was to recall and revoke the rule of law as determined by the Supreme Court of California.

It is equally clear to me that the construction placed upon the statutes herein should be applicable until such time as the Legislature of Oklahoma amends the governing rule to the contrary. The judgment of the district court should be reversed so that the county court may exercise its sound judicial discretion to the best interest of the estate involved.

---

DAVISON, V.C.J. (dissenting). I cannot concur in the reasoning nor the conclusion reached in this case by the majority of the court. In discussing my views, some facts, not set out in the foregoing opinion, are of importance. This action is not one wherein the heirs or other persons having an interest in the estate are complaining of the acts of the executors, but is one founded upon the objections of a would-be purchaser to the confirmation of a sale of property of the estate to another.

The property consisted of 100 barrels of whiskey, in storage with the Stitzel-Weller Distillery, evidenced by 20 warehouse receipts which had been issued therefor, and which had been purchased by deceased during his lifetime. Immediately after their appointment, the executors wrote the distillery as to the value of the property. They were notified of the price then, and again several months later. This latter quotation was higher than the former because the price ceiling had been advanced by the O.P.A. Soon thereafter, one of the executors heard a radio report to the effect that grain was to be again delivered to the distillers to make more whiskey and that "there will not be any shortage of whiskey." He thereupon secured the order of the county court to sell the property as being "likely to depreciate in value if not soon disposed of and will incur loss and expense by being kept", under the provisions of 58 O.S. 1941 §387. Storage fees were being paid on it during all this time. The receipts were sent to Stitzel-Weller Distillery, the purchaser, with draft attached for $7,605, which was paid March 26, 1945.

About ten days later, no confirmation of the sale having been had, plain-

tiff in error offered to pay $8,500 which offer was renewed in May, 1945, at the time of the hearing on motion to confirm. The county court refused to confirm the sale and accepted the bid of Bowdry. The appeal to the district court was on questions of both law and fact. This appeal is from the judgment of the district court ordering confirmation of the sale as made by the executors.

The sale proceedings were had under the provisions of 58 O.S. 1941 §387, which is as follows:

"At any time after receiving letters, the executor, administrator, or special administrator may apply to the judge and obtain an order to sell perishable and other personal property likely to depreciate in value, or which will incur loss or expense by being kept, and so much other personal property as may be necessary to pay the allowance made to the family of the decedent. The order for the sale may be made without notice; but the executor, administrator or special administrator is responsible for the property, unless after making a sworn return, and on proper showing, the court shall approve the sale."

This identical section is a part of the codes of Arizona, Idaho, Montana, North Dakota, South Dakota, Wyoming and, before amendment, of California, but it does not appear to have been previously interpreted by any court, especially with regard to the general statute providing that:

"No sale of any property of an estate of a decedent is valid unless made under order of the county court, except as otherwise hereinafter provided. All sales must be reported under oath and confirmed by the county court before the title to the property sold passes." 58 O.S. 1941 §382.

The cases cited in the majority opinion have no application because they do not deal with property embraced in, or proceedings had under section 387, supra. The cases of Bovard v. Dickenson and Jones v. Wheeler are actions on promissory notes brought by persons to whom the notes had been assigned by the representatives of the deceased payees. In both cases, plaintiffs were denied relief because it was not shown that the notes were sold to plaintiffs by "any order or proceeding of the probate court." The latter case, quoting from the opinion in the former, contains the statement that "the property involved here is not one of the exceptions" in section 382, supra.

The Flaherty case and the Farmer's National Bank v. Cravens cases deal with sales made under the provisions of the general sales statutes; the former of real estate; the latter of automobiles which were never ordered sold by the county court.

In the instant case, the property was such that it was classified as perishable or likely to depreciate in value. Because a loss to an estate would result if the regular sale procedure were followed, the Legislature provided a method of sale without delay, by the enactment of the first statute above. The rules governing statutory construction are well settled.

"Ascertaining the legislative intent is the primary consideration in determining the meaning and effect of any law." Sheridan Oil Co. v. Superior Court of Creek Co., 183 Okla. 372, 82 P. 2d 832.

"A statute should be given a construction which renders every word and sentence operative rather than one that renders some word or sentences idle and nugatory." Case, Co. Treas., v. Pinnick, 186 Okla. 217, 97 P. 2d 58.

"A special statute governs over a general statute covering the same subject matter." In re Hunter's Estate, 195 Okla. 416, 158 P. 2d 345.

Section 387, supra, by unequivocal language makes it unnecessary to give notice of application to sell. The alleviation of the necessity for confirmation before transfer of title, is not so apparent from a casual reading of the statute. But the last sentence of the

statute would be nugatory if the administrator could not deliver the property and pass title before confirmation. By all rules of law the administrator is already liable under his bond for all the property of the estate. But by this section it was intended that he transfer certain property and convey title without prior confirmation of the probate court. Therefore, to prevent him having an opportunity to dissipate the same, he is required to make a return and secure confirmation in order to fix his liability upon final accounting at the amount received at the sale, rather than the fluctuating value of the property which he has disposed of. This sentence, then, protects the estate from the carelessness or fraud of the administrator who, by the first sentence of the statute, has been given power to sell and dispose of assets without the close supervision of the county court generally provided for. The section is applicable to special situations, and therefore, in those instances, has precedence over the general laws which would otherwise govern.

The reasonableness of such interpretation is apparent when the situations where the statute (sec. 387) is applicable are considered. Had deceased been dealing in produce and a carload of ripe tomatoes arrived after his death, they would have perhaps been a total loss before confirmation could be made. In the same length of time the market value of stocks, which might have been assets, can fluctuate greatly. In the instant case the value of the property happened to go up instead of down. Few prospective purchasers would dare make an offer to purchase perishable property at anything like its value if required to await confirmation before getting title, and the perishable property statute would be a useless addition to the otherwise complete provision for probate sale of personal property.

The California law has been amended to plainly state its meaning in line with this reasoning. See Depew v. Imler et al. (Cal.) 149 P. 2d 890.

It is my further opinion, however, that the majority opinion is wrong for another reason. The appeal to the district court was had upon questions of both law and fact as provided for in 58 O.S. 1941 §735. Any previous order of the county court thereupon became as ineffectual as though it had never been made. The question was to be tried de novo in the district court, in the same manner as though it had originated there. As was said in the case of Tilman v. Tilman, 74 Okla. 259, 177 P. 558:

"In probate matters, where an appeal is taken from the county court to the district court on questions of fact, or on questions of both law and fact, the trial in the district court must be de novo, and shall be conducted in the same manner as if the case and proceedings had lawfully originated in that court; and such appellate court has the same power to decide the questions of fact which the county court or judge had. . . ."

Among the numerous subsequent decisions of this court to the same effect are: Sam v. Sam, 172 Okla. 342, 45 P. 2d 462; In re Miller's Estate, 182 Okla. 534, 78 P. 2d 819; In re Caldwell's Estate, 186 Okla. 399, 98 P. 2d 22.

The confirmation or rejection of the sale was one of purely sound discretion. It is said in Rorer on Judicial Sales, secs. 108-110, that the courts are clothed with an unlimited discretion to confirm a judicial sale or not, as may seem wise or just. The matter of confirmation rests peculiarly upon the wise discretion of the court, in view of all the surrounding facts and circumstances, to be exercised in the interest of fairness, prudence, and the rights of all concerned; and it is difficult to come to any absolute legal rule on the subject, other than that of a sound legal discretion.

In deciding the case, this court has only one question to determine: Did

the district court, sitting as a probate court, abuse such discretion in confirming the sale? If not, the judgment should be affirmed. If so, the judgment should be reversed. The only evidence in the record having any bearing on an abuse of discretion is the offer of slightly more than 10 per cent additional to the amount the property sold for and this made sometime after the sale. The court should have confirmed the sale if it was legally made and fairly conducted and the sum bid was not disproportionate to the value. This means the value at the time the sale was made. McGregor v. Jensen, 18 Idaho, 320, 109 P. 729; In re Leonis Estate, 138 Cal. 194, 71 P. 171. Nothing in the record indicates that at the time of the sale the executor could have sold the property for more than he did sell it for. It is my opinion that the judgment of the district court was not an abuse of discretion and should have been affirmed.

I therefore respectfully dissent to the decision and opinion.

I am authorized to state that Mr. Chief Justice HURST, Justice GIBSON and Justice ARNOLD concur in the above dissent.

Rehearing Denied April 20, 1948.