[Civ. No. 15397. First Dist., Div. One. Mar. 3, 1953.]

Estate of EDWARD JOSEPH VEZINA, Deceased. ANNE M. VEZINA, Respondent, v. F. H. DAM, Appellant.

F. H. Dam, in pro. per., for Appellant.

Alfred F. Taddeucci and Ralph Bancroft for Respondent.

PETERS, P. J.—Appellant, a lawyer who appears in propria persona, is a holder of a promissory note executed by decedent, whose estate is apparently insolvent. As such

creditor he protested the confirmation of sale of several parcels of the estate property. The probate court, by two separate orders, confirmed the sales. From these orders this appeal is taken.

On September 7, 1951, the administratrix filed a return of sale at private sale and a petition for confirmation of such sale of two parcels of real property belonging to the estate located in Oakland, and on the same date filed a similar petition in reference to a parcel of real property located in Berkeley. The Oakland petition, after setting forth the appointment and qualification of petitioner as administratrix and the return of an inventory and appraisement and partial amendment inventory and reappraisement, avers that it is for the best interests of the estate that the realty be sold to obtain funds for the payment of claims and expenses of administration; that a notice of sale was published as required by law; that one Florkewicz was the highest bidder and that the two described parcels had been sold to him at private sale on August 30, 1951. It is further averred that the total purchase price was $5,050; that Florkewicz made a $505 deposit; that the balance of $4,545 was to be paid upon confirmation of the sale. The petition describes the interest of the estate in the parcels to be sold as "that certain real estate" or "those certain parcels of real property," but the prayer is that the sales be confirmed and the administratrix be directed to convey to the purchaser "the right, title and interest of said decedent in and to said real property at the time of his death and all of the right, title and interest of said estate in and to the same."

This return and petition, in setting forth the conditions of the sale, stated that the bid of Florkewicz was conditional upon the administratrix paying an enumerated list of taxes, assessments and liens out of the purchase price. The list included 11 items. The first item was delinquent county and city taxes in an unspecified amount. The next four items were United States tax liens, each enumerated, and totalling $649.98. The next six items refer to specified mechanic's liens totalling $2,619.80.

The petition also alleges the legality and fairness of the sale, that it exceeds 90 per cent of the appraised value, and that an increase in the bid of 10 per cent could not be secured.

The petition and return as to the Berkeley property was identical except that the sale had been made for $600, with a

$60 deposit, the balance to be paid upon confirmation. As to this sale, however, only the city and county taxes, and the four United States tax liens were listed as items that had to be paid from the purchase price.

Proper notices of hearings of these petitions were given. Appellant contested both petitions. He averred that he had filed a creditor's claim for $2,500 against the estate; that his claim had been ignored by the administratrix; that on February 19, 1951, he had filed an action on his claim; and that he was interested in the estate. He admitted that letters of administration had been issued to the administratrix, and that the estate owned the parcels involved, but denied all of the other allegations of the petitions, and prayed for their denial.

A hearing was had on October 2, 1951. Appellant called the counsel for the administratrix as his sole witness. He testified that earlier appraisements of the two Oakland parcels and the Berkeley parcel had been filed showing values more than twice the amounts of the bids, but that it was later discovered that the estate only owned a half interest in the parcels, and later reappraisals and inventories were filed showing the proper values.

Respondent thereupon called as her witness the bidder, Florkewicz, and tried to ascertain if he owned the other half interest in the properties, but appellant's objections that title could not be tried in such proceeding were sustained. Appellant, during argument, contended that the estate owned the entire interest in the properties but made no showing to that effect except to rely upon the original incorrect appraisement.

The trial court noted that the proceedings were regular on their face, overruled the objections to confirmation of the sales, and made separate orders confirming the two sales. In the Oakland order the court found that the notices were properly given and that the sale was properly held. The court then recited the terms of the sale, including the payment of taxes, and the tax and mechanic's liens. It was found that Florkewicz was the highest bidder; that the sale was legal and fair; that the bid was within 90 per cent of the appraised value; that the bid was not disproportionate to the value of the lots; that an advance of 10 per cent could not be obtained; and that the sale was for the benefit and best interests of the estate. The order then confirmed the sale, authorized the administratrix to convey, and required an additional $500

surety bond of her. The Berkeley order and findings were identical except as to the amounts, the number of liens to be paid off, and no additional bond was required.

The appellant contends that the trial court exceeded its jurisdiction by trying title in the probate proceeding. In this connection appellant points to the evidence that original appraisals were filed when the estate believed it owned the entire interest in the lots, and then reappraisals of less than half the original appraisals were made. He also refers to the evidence that this was done because the estate discovered it owned only a half interest, and points out that the findings do not divulge that it was only a half interest that was being sold. He then urges that in some way this amounted to trying title in the proceedings. Respondent correctly points out that the trial court sustained all of appellant's objections to trying title, and that it was for this reason that it failed to find whether the estate owned a half or whole interest. Appellant, while successfully objecting to any determination that the estate owned but a half interest, apparently seeks a determination that the estate owns the entire interest. This inconsistent position is unsound.

It is, of course, the law that title cannot be tried as between an adverse claimant and the estate in the probate proceedings. (*Estate of Dabney*, 37 Cal.2d 672 [234 P.2d 962]; *McCarthy* v. *Superior Court*, 64 Cal.App.2d 468 [149 P.2d 55]; *Guardianship of Vucinich*, 3 Cal.2d 235 [44 P.2d 567].) The trial court did not try title and could not have done so.

Respondent correctly relies on sections 785 and 786 of the Probate Code as demonstrating that the function of the probate court is strictly limited on confirmation proceedings. Under section 785 the court is required to investigate into the necessity for the sale and the advantage therefrom, as ascertained from the return and the evidence. If it finds good reason for the sale, legality and fairness in the conduct of the sale, and that the bid meets certain specified standards, then "the court shall make an order confirming the sale." Section 786 then requires the conveyances to be executed which "convey all the right, title, interest and estate of the decedent" plus after acquired title. The return, and the evidence believed by the trial court, were such that, under the sections, the court's approval was mandatory. The court, quite properly, under section 786, ordered the estate's title to be conveyed. That is all that it was empowered to do. If there are other assets of the estate, or if the administratrix

conveys a greater interest than represented, the appellant may object to her account.

■ The only other contention of appellant is that the orders of confirmation are void because they approve the acceptance of bids conditioned upon the administratrix' payment of taxes, tax and mechanic's liens. Neither this, nor any other claimed defect in the bids, was made at any time in the trial court and admittedly is raised for the first time in this court. Appellant claims, however, that the claimed defect is jurisdictional.

While the notice of sale recited that the property was to be sold subject to taxes and other claims of record, the bids carefully enumerated the taxes, and tax and mechanic's liens that were to be paid off by the administratrix, and the bids were conditioned on such payments. The administratrix agreed to these provisions. All this was fully disclosed not only in the bids but in the petitions for confirmation. But appellant urges that, because the bids and confirmations were expressly conditioned on the payment of such liens, the bids and confirmations were absolutely void. It is contended that conditional bids at a judicial sale are invalid. ■ At common law and in California no condition making the offeror's performance dependent on an uncertain contingency can be received by the officer conducting a judicial sale. The rationale of this rule is that the rule of *caveat emptor* prevails as to judicial sales, and that the purchaser merely receives a quit claim title. (See, generally, cases collected and commented on in 104 A.L.R. 632; 31 Am.Jur. 445, § 89.)

Under the old probate law in California, under which the administrator had to first secure authorization from the court to sell, a probate sale was a judicial sale, and subject to the rule that the administrator was without power to accept a conditional bid. The leading case is *Estate of Bradley,* 168 Cal. 655 [144 P. 136]. In that case one Going was a real estate broker who had listed certain property of an estate for sale. One Tobin offered to buy the property for $5,500, depositing with Going $2,750 as a down payment. Going then, in the estate proceedings, had a dummy offer $4,500 for the property, depositing $450 with the bid. The administrator asked for authorization to sell at that price. At the court hearing the court was informed of the true facts. Tobin testified that he was willing to pay $5,500 and submitted a written bid on condition that Going, who was not a party to the court proceedings, return to him the $2,750. The court authorized the

sale, applying the $450 down payment on the purchase price, and ordering Going to return the balance of $2,300 to Tobin. The court held the Tobin bid invalid because it was conditional. At page 661 the court stated: "This was, in effect, a condition attached to the offer. Such condition deprived the offer of the absolute character which the terms of the order of sale, and the nature of the transaction, required. Tobin did not undertake to pay the entire purchase price except upon an event which might or might not take place. The probate law contemplates a contract which the buyer may be compelled to complete. Tobin did not agree to enter into any such contract."

Of course, the condition in the Bradley case that was attached to the offer was one within the control of a third person who was not a party to the proceeding, and therefore the court order provided for a contingency that might or might not occur. In the present case, the "condition" was that the administratrix pay certain tax and mechanic's liens—all matters that rested entirely within the control of the administratrix, who was subject to court control. For that reason the offer could be interpreted to have been an "absolute" one within the meaning of the Bradley case.

 There is another factor involved. If the holders of the tax and mechanic's liens here involved had filed claims for such amounts, and had such claims been allowed, then, under the express terms of section 762 of the Probate Code, the administratrix would have been required to apply the purchase price to the payment of these claims. In the instant case there is no evidence that such claims were filed and allowed but the section does indicate a statutory intent that such claims be paid out of the purchase price. Of course, under the provisions of section 716 of the Probate Code such claimants are not required to file claims, and section 929 of that code permits any debt of the decedent to be paid without the filing of any claim. Thus the condition here—that the tax and mechanic's liens first be paid—was one within the power and control of the administratrix. Of course, if she should pay a lien that is invalid, and no claim had been filed and allowed, objection could be made to her account, and if no estate money was then available, she would be liable on her bond. It was undoubtedly for this reason that the trial court increased her bond on the order confirming the Oakland sale.

The respondent calls attention to another and alternative reason why the orders here involved were valid and not within the rule of the Bradley case. In *Mains* v. *City Title Ins. Co.,* 34 Cal.2d 580 [212 P.2d 873], the court held that under present law a sale by an administrator is not a judicial sale; that it is a private sale; that the rule of *caveat emptor* does not apply to such a sale, and that implied warranties of title do apply to such sales. The opinion is predicated upon the change in the law accomplished in 1919 by the amendment to old section 1517 of the Code of Civil Procedure (now as amended, Prob. Code, § 755) which struck from the law the requirement of a prior court order as a prerequisite to a valid probate sale. Hence, said the court, under present law, such a sale is not pursuant to a court order and therefore is not a judicial sale. If this decision is sound (it has been criticized—see 2 Stanford L. Rev. 599; 23 So. Cal. L. Rev. 604) then, of course, the administratrix was required to pay off all tax and mechanic's liens against the property, and the condition imposed in the offer added nothing to what the law already compelled.

For these several reasons the offers to buy and the orders confirming the sales were valid and not subject to attack in these proceedings.

The orders appealed from are affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied April 2, 1953, and appellant's petition for a hearing by the Supreme Court was denied April 30, 1953.